IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

NATALIE CHEREESE GRIFFIN,     )
                              )
      Plaintiff,              )
                              )
v.                            )       Case No. 3:20-cv-704-CWB
                              )
KILOLO KIJAKAZI,[1]           )
Acting Commissioner of        )
Social Security,              )
                              )
      Defendant.              )

## MEMORANDUM OPINION AND ORDER

### I.    Introduction and Administrative Proceedings

Natalie Chereese Griffin ("Plaintiff") filed an application for Disability Insurance Benefits under Title II of the Social Security Act on February 7, 2017, initially alleging disability onset as of February 7, 2017 but later amended to May 1, 2018, due to neurological disorder and post-traumatic stress disorder ("PTSD"). (Tr. 17, 47-48, 85-86, 93).[2] Plaintiff's claim was denied at the initial level on March 7, 2017 (Tr. 17, 95), and Plaintiff requested *de novo* review by an administrative law judge ("ALJ") (Tr. 17, 104-08). The ALJ subsequently heard the case on September 10, 2019 and referred Plaintiff for a consultative examination. (Tr. 77-84). After the consultative examination, the ALJ conducted an additional hearing on April 20, 2020 and took testimony from Plaintiff. (Tr. 17, 40-66). A vocational expert also testified at the hearing.

---

[1] Kilolo Kijakazi became Acting Commissioner for the Social Security Administration on July 9, 2021 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] References to pages in the transcript are denoted by the abbreviation "Tr."

(Tr. 66-74).   The ALJ took the matter under advisement and issued a written decision on

May 1, 2020 that found Plaintiff not disabled.  (Tr. 17-33).

The ALJ's written decision contained the following enumerated findings:

1.  The claimant meets the insured status requirements of the Social Security Act
    through December 31, 2023.

2.  The claimant has not engaged in substantial gainful activity since
    February 7, 2017, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.  The claimant has the following severe impairments: posttraumatic stress
    disorder; migraines; transient ischemic attack; and gastroesophageal reflux
    disease (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that
    meets or medically equals the severity of one of the listed impairments in
    20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525,
    404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the
    claimant has the residual functional capacity to perform light work as defined
    in 20 CFR 404.1567(b), except the claimant must have the option to alternate
    between sitting and standing twice per hour for five to ten minutes without
    being off task; can never climb ladders, ropes or scaffolds; can occasionally
    climb ramps or stairs, stoop, balance, kneel, crouch, and crawl; can occasionally
    reach overhead in bilaterally; and can frequently handle, finger, and feel
    bilaterally. She can frequently use foot pedals bilaterally. She must avoid
    concentrated exposure to extreme cold, extreme heat, vibration, and pulmonary
    irritants; and must avoid all exposure to unprotected moving mechanical parts
    and unprotected heights. The claimant is able to perform simple and complex
    multi-step tasks; in a low-stress work environment, which is defined as
    involving only work-related decisions, with no more than occasional changes
    to the work routine. She cannot work conveyor belt jobs or fast-paced
    production jobs, and she can tolerate occasional interaction with coworkers and
    supervisors, but has no job requirements involving interaction with the public.
    The claimant will be off task up to, but not more than, five percent of the
    workday.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.   The claimant was born on August 18, 1976 and was 40 years old, which is
    defined as a younger individual age 18-49, on the alleged disability onset date
    (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from February 7, 2017, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 19, 20, 21-22, 31-32, 33).

On July 10, 2020, the Appeals Council denied Plaintiff's request for review (Tr. 1-5), thereby rendering the ALJ's decision the final decision of the Commissioner. *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

On appeal, Plaintiff asks the court to reverse the final decision and to award benefits or, alternatively, to remand the case for a new hearing and further consideration.  (Doc. 1 at p. 2; Doc. 15 at pp. 14, 15).  As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to entry of final judgment by a United States Magistrate Judge (Docs. 10, 11), and the undersigned finds that the case is now ripe for review pursuant to 42 U.S.C. § 405(g).  Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the final decision is due to be AFFIRMED.

## II.     Standard of Review and Regulatory Framework

Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted). The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). Despite the deferential nature of its review, however, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision. *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3] To make such a determination, the ALJ employs a five-step sequential

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

evaluation process.  *See* 20 C.F.R. §§ 404.1520 & 416.920.

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment severe?
>
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through step four.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four.  *Id*.  At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform.  *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC").  *Phillips*, 357 F.3d at 1238-39.  The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical

---

[4] *McDaniel* is a supplemental security income ("SSI") case.  Because the same sequence applies when evaluating claims for disability insurance benefits brought under Title II, SSI cases arising under Title XVI are appropriately cited as authority in Title II cases, and vice versa.  *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F.App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40. The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual, and combinations of the factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. at 1240.

**III.    Issue on Appeal**

On appeal, Plaintiff argues that the ALJ failed to properly evaluate the opinions of two consultative examining doctors and the Veteran Affairs' ("VA") disability rating. (Doc. 15 at p. 1).

**IV.    Discussion**

**A.    Opinions of Consultative Examiners**

Plaintiff contends that the opinions of Alphonza Vester, M.D., and Velda Pugh, M.D., the consultative physicians who examined Plaintiff at the ALJ's request, prove limitations greater than Plaintiff's RFC and establish that she is disabled. The Commissioner maintains that the ALJ's decision is supported by substantial evidence. (Doc. 16 at p. 3).

Social security regulations and rulings establish the framework for an ALJ's consideration of medical opinions. *See* 20 C.F.R. § 404.1527; SSR 96-2p, 1996 WL 374188 (S.S.A.

July 2, 1996).[5]  "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014); 20 C.F.R. § 404.1527(c).  A treating physician or source has a history of medical treatment and an ongoing treatment relationship with the claimant consistent with accepted medical practice.  20 C.F.R. § 404.1502.  An examining non-treating physician or source has examined the claimant but does not have an ongoing treatment relationship.  *Id*.  A non-examining source is a physician, psychologist, or other acceptable medical source who has not examined the claimant but has provided a medical or other opinion based upon medical and treatment records.  *Id*.  "Generally, the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." *McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 923 (11th Cir. 2006); 20 C.F.R. § 404.1527(c)(1), (2), (5).

---

[5] On January 18, 2017, the Social Security Agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence."  82 Fed. Reg. 5844, 2017 WL 168819 (Jan. 18, 2017).  *See also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844).  These final rules became effective March 27, 2017, setting forth the rules for evaluating opinion evidence, both medical and nonmedical, and apply only to claims filed with the SSA on or after March 27, 2017.  20 C.F.R. § 404.1527.  Because Plaintiff filed her application on February 7, 2017, the court applies the prior regulations as were in effect at the time of Plaintiff's filing.  *See* 20 C.F.R. § 404.614.  Also, the court notes that the current iterations of §§ 404.1527 & 404.1502, "while purporting to apply to claims filed *before* March 27, 2017, are not identical in language to the version in effect at the time of the ALJ's decision.  For the sake of consistency, the court continues to cite the language from the former regulation sections that were in effect at the time of the ALJ's decision."  *See Belko v. Berryhill*, No. 1:16-CV-2637, 2017 WL 5197241, at *9 n.4 (N.D. Ohio Oct. 23, 2017), *report and recommendation adopted sub nom. Belko v. Comm'r of Soc. Sec.*, No. 1:16CV2637, 2017 WL 5178280 (N.D. Ohio Nov. 8, 2017) (emphasis in original).  Although the current language of the regulations has been modified and renumbered, the changes are not substantive and would not alter this court's analysis.  *See id.*

In addition to considering the examining and treating relationship of a medical source and any specialization of a medical source, the agency will also consider the supportability and consistency of the medical source's opinion, along with any other factors that tend to support or contradict the medical source's opinion. 20 C.F.R. § 404.1527(c)(1)-(6). "These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F.App'x 521, 523 (11th Cir. 2014). "A central function of the ALJ is to weigh the medical opinions in the record and to resolve any conflicts between such opinions." *Divirgilio v. Comm'r of Soc. Sec.*, No. 6:19-CV-1055, 2020 WL 4593323, at *4 (M.D. Fla. Aug. 11, 2020) (citing *Wolfe v. Chater*, 86 F.3d 1072, 1079 (11th Cir. 1996) ("The ALJ's task is to examine the evidence and resolve conflicting reports.")); *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F.App'x 520, 525 (11th Cir. 2015) ("It is 'solely the province of the [Commissioner]' to resolve conflicts in the evidence and assess the credibility of witnesses.") (citation omitted).

An RFC determination is an assessment of what a claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Phillips*, 357 F.3d at 1238-39; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997); 20 C.F.R. § 404.1545(a). "To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citations omitted). However, an ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record." *Coley v. Comm'r of Soc. Sec.*, 771 F.App'x 913, 917 (11th Cir. 2019); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is 'not enough to enable [the district court …]

to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'") (citation omitted).  And "to find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician." *Id*. at 1055-56.  "[T]he task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F.App'x 941, 945 (11th Cir. 2016); *Rodriguez v. Comm'r of Soc. Sec.*, No. 618CV503ORL18TBS, 2018 WL 7113871, at *2 (M.D. Fla. Dec. 27, 2018), *report and recommendation adopted*, No. 618CV503ORL18TBS, 2019 WL 316051 (M.D. Fla. Jan. 24, 2019) ("[T]here is no requirement that an ALJ base an RFC finding on a medical source's opinion.").

### 1.    Dr. Alphonza Vester

Due to the lack of opinion evidence in the record, the ALJ directed that a consultative examination be performed on Plaintiff.  (Tr. 80-81).  Dr. Vester's resulting examination revealed that Plaintiff had tenderness to the rib cage anteriorly, crepitus in the left knee, tenderness to the bilateral quadriceps, hamstrings, and calves, tenderness to the bilateral ankles and metacarpophalangeal and proximal interphalangeal joints of both hands, and tenderness on palpation of the bilateral wrists.  (Tr. 2986).  Plaintiff also had significant tenderness over her dorsolumbar spine and medial aspect of the left shoulder.  (Tr. 2986).  Dr. Vester observed that Plaintiff's gait was antalgic, in which she protected her left side, that she was unable to perform a squat and rise, but that she could perform heel and toe walk.  (Tr. 2987).  Range of motion testing showed limited range of motion in the cervical, bilateral shoulder, lumbar, hip and knees. (Tr. 2990-91).  Dr. Vester diagnosed Plaintiff with fibromuscular pain, migraine headaches, degenerative disease lumbar (probable), bronchial asthma (mild), mood disorder, osteoarthritis of multiple sites (left shoulder, bilateral knees, and bilateral hands), and allergic rhinitis.  (Tr. 2987).

Dr. Vester opined that Plaintiff is able to sit for one hour, stand for 30 minutes, and walk for 15 minutes at one time, and sit for six hours, stand for two hours, and walk for one hour in an eight-hour workday, due to musculoskeletal pain, tenderness and limited range of motion. (Tr. 2993).  Dr. Vester indicated that Plaintiff can lift up to ten pounds frequently but can only carry such weight occasionally, lift and carry up to 20 pounds occasionally, and lift up to 50 pounds occasionally but never carry such weight, all due to the effects of back pain, joint pain, headaches, muscular pain, and trigger point tenderness.  (Tr. 2992).  Dr. Vester determined that Plaintiff can never reach overhead, can occasionally reach in all other directions, handle, finger, feel, and push/pull bilaterally, all due to musculoskeletal pain, tenderness, shoulder pain, hand pain, and limited range of motion.  (Tr. 2994).  Dr. Vester found that Plaintiff can occasionally use her feet to operate foot controls due to lower extremity pain, tenderness, and knee pain.  (Tr. 2994). Dr. Vester also found that Plaintiff can occasionally climb ramps and stairs, and never climb ladders or scaffolds, balance, stoop, kneel, crouch or crawl, due to musculoskeletal pain, tenderness, knee pain, and shoulder pain.   (Tr. 2995).  Additionally, Dr. Vester opined that Plaintiff can never work at unprotected heights, operate a motor vehicle, work around dusts, odors, fumes, and pulmonary irritants, or work in extreme cold and heat, and can occasionally work around moving mechanical parts, in humidity and wetness, and around vibrations, all due to musculoskeletal pain and tenderness of the shoulders, hands, fingers, and knees, asthma, vascular headaches, and mood disorder.  (Tr. 2996).  Dr. Vester further found that Plaintiff could perform all activities such as shopping, traveling without a companion, ambulating without an assistive device, walking a block at a reasonable pace on rough or uneven surfaces, using standard public transportation, climbing a few steps, preparing simple meals, caring for her personal hygiene, and sorting, handling, or using paper/files.  (Tr. 2997).

Plaintiff argues that Dr. Vester's opinion establishes far greater and more detailed limitations than the ALJ accounted for in the RFC finding. (Doc. 15 at p. 6). The court disagrees. In discussing Dr. Vester's opinion, the ALJ stated:

> The opinion by Dr. Vester as part of the consultative examination deserves little weight. The consultative examiner was limited to a single-day evaluation. The limitation in standing and walking, for instance, is not consistent with the findings in the consultative examination, which reflected minimal limitation in range of motion. It is illogical for the consultative examiner to state that the claimant can perform all activities in section VIII of the medical source statement, but that the claimant could not engage in the postural functions listed in section V. The opinion is also not consistent with the medical evidence of record and activities of daily living, which reflect full range of motion, relatively good physical functioning with no restrictions in driving or handling household chores. There is insufficient basis for the postural limitations merely supported by a vague diagnosis of "musculoskeletal pain," shoulder pain," and "hand pain," which are not supported by imaging or other objective evidence. The consultative examiner is describing symptoms for which there is no corroboration in the extensive record.

(Tr. 30).

The ALJ properly evaluated Dr. Vester's medical opinion and articulated sufficient reasons for giving the opinion little weight. The ALJ noted that Dr. Vester's examination showed that Plaintiff had minimal limitation in range of motion in her neck, back, shoulders, hip and knees, that she had full strength and normal sensation, that her fine and gross use of the hands was good, and that she had no muscular atrophy. (Tr. 25, 30). The ALJ found those findings inconsistent with Dr. Vester's opinion that Plaintiff could stand for no more than two hours and walk for no more than one hour during the workday. (Tr. 26, 30). The ALJ also found that Dr. Vester's opinion that Plaintiff could never perform postural activities such as balancing, stooping, kneeling, crouching, or crawling was inconsistent with his determination that Plaintiff could perform activities such as shopping, traveling independently, ambulating without an assistive device, walking a block over rough or uneven surfaces, using public transportation, climbing a few steps, preparing simple meals, caring for personal hygiene, and sorting or handling paper files. (Tr. 30,

2993, 2995).  The ALJ also noted that the doctor's opinion was not consistent with the medical evidence of record and activities of daily living, which reflected full range of motion and relatively good physical functioning with no restrictions in driving or handling household chores.  (Tr. 21, 27, 30, 289-91).

The ALJ observed that there was no evidence "in the extensive record" corroborating the symptoms described by Dr. Vester.  (Tr. 30).  The ALJ noted that "[i]maging revealed no degenerative disc disease in the lumbar spine before the alleged onset date," that "the impairment was not severe enough to follow up with further studies," that Plaintiff "did not always mention back pain or any musculoskeletal pain or tenderness," and that "[i]maging of other joints found no more than minimal or small abnormalities."  (Tr. 26).  The ALJ also stated that Plaintiff's own comments to treating physicians and the observations made by treating physicians reflected the mildness of Plaintiff's impairments.  (Tr. 27).  The ALJ noted that in May 2018, after the alleged onset date, Plaintiff "denied pain, was ambulatory and respirated with ease," and that treating physicians never noted observing other than a normal gait.  (Tr. 27, 1857-58).  Further, the ALJ noted that Plaintiff took "no more than relatively mild pain medications" and that "[m]ore intensive treatment, such as bracing or surgery, was not necessary."  (Tr. 27).

Plaintiff asserts that the ALJ failed to evaluate Dr. Vester's opinion under the factors in 20 C.F.R. § 404.1527(c) or provide good reasons for rejecting Dr. Vester's opinion.  (Doc. 15 at p. 8).  However, "the regulations do not require the ALJ to explicitly address each factor."  *Brock v. Comm'r, Soc. Sec. Admin.*, 758 F.App'x 745, 751 (11th Cir. 2018).  Moreover, the "good cause" standard does not apply to nontreating sources.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) ("The law of this circuit is clear that the testimony of a <u>treating</u> physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary.") (emphasis

added).  In short, the ALJ thoroughly discussed the medical record and sufficiently articulated reasons for finding that Dr. Vester's opinion was not supported by or consistent with the medical record.

Plaintiff next argues that the ALJ improperly ignored Dr. Vester's opinion because it was a one-time examination.  (Doc. 15 at p. 9).  The ALJ did not ignore Dr. Vester's opinion, as the ALJ thoroughly discussed the opinion and determined that the opinion was not supported by or consistent with the other medical evidence in the record.  The ALJ also correctly noted that Dr. Vester was a one-time examining physician.  The ALJ therefore was not required to provide good reasons for not giving great weight to Dr. Vester's opinion—the ALJ only needed to consider the opinion and articulate the weight assigned to it, which the ALJ did.  20 C.F.R. § 404.1527(c); *see Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) ("The ALJ correctly found that, because Hartig examined Crawford on only one occasion, her opinion was not entitled to great weight.") (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir.1987) (stating that a doctor who examines a claimant on only one occasion is not considered a "treating physician")); *Beegle v. Soc. Sec. Admin., Com'r,*, 482 F.App'x 483, 486 (11th Cir. 2012) ("The ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician.  In the end, the ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion.") (internal citation omitted).

Plaintiff also argues that the ALJ's finding that Dr. Vester's opinion was inconsistent with the limited medical evidence was not reasonable or logical given that the reason for scheduling the examination was a lack of medical evidence during the relevant period.  (Doc. 15 at p. 10).  "It is well-established that the ALJ has a basic duty to develop a full and fair record."  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *see* 20 C.F.R. § 404.1512(d) ("Before we make

a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application. ... We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports.") and § 404.1512(e) ("We may ask you to attend one or more consultative examinations at our expense. ... Generally, we will not request a consultative examination until we have made every reasonable effort to obtain evidence from your own medical sources.").  At the hearing, the ALJ and Plaintiff's counsel agreed to having a consultative examination performed because "although there[] [was] a ton of evidence" and "a lot of treatment notes" there was not "a lot of opinion evidence" and that a consultative examination would therefore be ordered so as "to fully develop the record."  (Tr. 80-81).  However, the ALJ was not required to accept and give great weight to Dr. Vester's opinion simply because a consultative examination was ordered.  As the parties discussed at the hearing, there was "a ton evidence" in the record.  The ALJ properly discussed Dr. Vester's opinion in relation to the rest of the record and properly weighed it pursuant to the factors in 20 C.F.R. § 404.1527(c).  An "ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion." *Edgecomb v. Comm'r of Soc. Sec.*, 841 F. App'x 142, 144 (11th Cir. 2020); *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) ("'The law is clear that, although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'") (citations omitted).

Lastly, Plaintiff argues that nothing about Plaintiff's sporadic daily activities supported the ALJ's conclusion that Plaintiff can sustain full-time functioning.  (Doc. 15 at p. 12).  The ALJ found that Dr. Vester's opinion was "not consistent with the medical evidence of record and

14

activities of daily living, which reflect full range of motion, relatively good physical functioning with no restrictions in driving or handling household chores." (Tr. 30). The record reflects that Plaintiff was able to drive, shop on occasion, cook simple meals, perform household chores, and handle personal care. (Tr. 22, 27, 286, 289-91). Plaintiff also could travel independently, use public transportation, and sort or handle paper files. (Tr. 30, 2997). The ALJ properly considered Plaintiff's daily activities as a factor in assessing Dr. Vester's opinion and Plaintiff's subjective complaints with the other medical evidence. *See* 20 C.F.R. § 404.1529(c)(3)(i) (an ALJ will consider a claimant's daily activities when determining the symptoms and severity of an impairment); *Coheley v. Soc. Sec. Admin.*, 707 F.App'x 656, 660 (11th Cir. 2017) (the ALJ properly considered plaintiff's daily activities: plaintiff was able to drive, get her child ready for school in the morning, do laundry, shop, cook with minimal assistance, and go to doctor's appointments); *Strickland v. Comm'r of Soc. Sec.*, 516 F.App'x 829, 832 (11th Cir. 2013) (finding that plaintiff's daily living activities, coupled with her medical evidence, supported the ALJ's adverse credibility determination); *Dyer*, 395 F.3d at 1212 (the ALJ properly considered plaintiff's daily living activities as one factor in assessing the plaintiff's subjective complaints of pain). Plaintiff "must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (*per curiam*).[6]

Based upon the foregoing, the court concludes that the ALJ's decision to give little weight to Dr. Vester's opinion was supported by substantial evidence and did not constitute error.

---

[6] Plaintiff's citation to 20 C.F.R. § 404.1572(c) is misplaced, as that section pertains to what is considered "substantial gainful activity."

### 2.   Dr. Velda Pugh

The ALJ noted that Dr. Pugh performed a psychiatric consultative examination in September 2019 at which Plaintiff reported having been diagnosed with PTSD in 2014 and migraine headaches in 1999, having had a stroke in 2013, which led to her having a breakdown at work in 2014, having served in the Army from 1994 to 2006 and receiving an honorable discharge as an E-5, having had symptoms of flashbacks, depression, anxiety, tearfulness, hypervigilance, insomnia, decreased concentration, and decreased appetite, having no history of psychiatric hospitalizations but having been admitted to outpatient treatment at Fort Benning where she saw a therapist every three months and attended PTSD groups, having seen psychiatrist who prescribed escitalopram,[7] having last worked in February 2017 as a Department of Defense secretary, having quit that employment because she could not deal with people, having experienced problems with alcohol abuse, and as appearing tearful and stating that her mood was angry and easily upset. (Tr. 28, 2978).   The ALJ noted that, after a clinical interview and mental status examination, Dr. Pugh diagnosed Plaintiff with posttraumatic stress disorder and major depressive disorder. (Tr. 28, 2979).   The ALJ also noted that Dr. Pugh found that Plaintiff had marked limitation in interacting with others, but no limitation in concentrating or in handling instructions.  (Tr. 28, 2980-81).   Under the category of "interacting with others," Dr. Pugh opined that Plaintiff had marked limitations as to whether she could "[r]espond appropriately to usual work situations and to changes in a routine work setting."  (Tr. 281).

Plaintiff argues that Dr. Pugh's opinion establishes that she met the paragraph B criteria under Listings 12.06 and 12.15 and that she therefore should have been found disabled at Step 3

---

[7] "Escitalopram is used to treat depression and anxiety.  It works by helping to restore the balance of a certain natural substance (serotonin) in the brain."   https://www.webmd.com/drugs/2/drug-63989/escitalopram-oxalate-oral/details (last viewed October 11, 2022).

of the sequential evaluation.  (Doc. 15 at pp. 6-7).  For a claimant's impairments to meet or equal

Listings 12.06 and 12.15, they must meet the A criteria for each listing—these criteria differ—and

establish either the B or C criteria—which are both identical for the two listings.  *See* 20 C.F.R.

§ Pt. 404, Subpt. P, App. 1, §§ 12.06, 12.15.  Here, the ALJ only considered the B and C criteria,

which require a claimant to demonstrate either:

> B. Extreme limitation of one, or marked limitation of two, of the following areas of
> mental functioning:
> 1. Understand, remember, or apply information.
> 2. Interact with others.
> 3. Concentrate, persist, or maintain pace.
> 4. Adapt or manage oneself.
> OR
> C. Your mental disorder in this listing category is "serious and persistent;" that is,
> you have a medically documented history of the existence of the disorder over a
> period of at least 2 years, and there is evidence of both:
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly
> structured setting(s) that is ongoing and that diminishes the symptoms and signs of
> your mental disorder; and
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in
> your environment or to demands that are not already part of your daily life.

*Id*.  Ignoring paragraph C criteria, Plaintiff argues that "Dr. Pugh's opinion of marked limitations

in social interaction patently meets the requirements of 'paragraph B(2)' and responding to usual

work situations and changes in a routine work setting plainly falls under the definition of 'adapting

and manage oneself' ('paragraph B(4)')."[8]  (Doc. 15 at p. 7).

---

[8] Section Pt. 404, Subpt. P. App. 1, § 12.00E4 provides: "Adapt or manage oneself (paragraph B4).
This area of mental functioning refers to the abilities to regulate emotions, control behavior, and
maintain well-being in a work setting. Examples include: Responding to demands; <u>adapting to
changes</u>; managing your psychologically based symptoms; distinguishing between acceptable and
unacceptable work performance; setting realistic goals; making plans for yourself independently
of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware
of normal hazards and taking appropriate precautions. These examples illustrate the nature of this
area of mental functioning."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00E4 (emphasis added).

The ALJ determined that the severity of Plaintiff's mental impairment did not meet or medically equal the criteria of Listing 12.06.  (Tr. 20).  With regard to the paragraph B criteria, the ALJ found that Plaintiff had a marked limitation in interacting with others but only had a moderate limitation in adapting or managing oneself.  (Tr. 21).  The ALJ stated:

> The claimant testified that she cleans a little and cooks with the help of her daughter. The claimant told the consultative examiner that she did light housework daily. She was casually dressed and groomed (Exhibit 23F). The claimant reported no problem with personal care, and she prepared simple meals, made up beds, did laundry, ironed clothes, washed dishes, drove a car, and shopped (Exhibit 5E). The record did not reveal any issue in regulating emotions, setting realistic goals, making independent plans, or not being aware of hazards. The claimant has no more than moderate limitation in this area of function.

(Tr. 21, 56, 289-91, 2979).

Here, the ALJ considered Dr. Pugh's opinion with the rest of the record and provided sufficient reasons in determining that Plaintiff did not meet Listing 12.06.  (Tr. 20-21).  The ALJ was not obligated to accept wholesale Dr. Pugh's opinion.  *See McSwain*, 814 F.2d at 619 (opinions of one-time examiners are not entitled to deference because they were not treating physicians). While the ALJ did not expressly mention Listing 12.15, the conclusion that Plaintiff did not meet Listing 12.15 is implied because Listing 12.06 incorporates the same Paragraph B and C criteria the ALJ considered in connection with Listing 12.06.  (Tr. 21). *See Flemming v. Comm'r of the Soc. Sec. Admin.*, 635 F.App'x 673, 677-78 (11th Cir. 2015) (substantial evidence supported the ALJ's implicit determination that plaintiff did not meet or equal Listing 12.02 or Listing 12.03, considering that listings 12.02, 12.03, and 12.08 required a claimant to satisfy the same paragraph B criteria, and the ALJ's decision analyzed Paragraph B criteria for Listing 12.08); *Hutchinson v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) (holding there may be an implied finding the ALJ did not meet a Listing); *Green v. Saul*, No. CV 119-035, 2020 WL 3146619, at *3 (S.D. Ga. May 19, 2020), *report and recommendation adopted*, No. CV 119-035, 2020 WL 3163291

(S.D. Ga. June 12, 2020) ("While the ALJ never expressly mentioned Listing 12.04, the conclusion Plaintiff did not meet Listing 12.04 is implied because Listing 12.04 incorporates the same Paragraph B and C criteria the ALJ considered in connection with Listing 12.06.").  The ALJ's determination that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing at Step 3 is supported by substantial evidence.

Plaintiff also argues that the ALJ's finding that Dr. Pugh's opinion was inconsistent with the limited medical evidence was not reasonable or logical given that the reason for scheduling the examination was a lack of medical evidence during the relevant period.  (Doc. 15 at p. 11).  As previously discussed, the ALJ properly developed the medical record by requesting a consultative examination but was not required to accept and give great weight to Dr. Pugh's opinion simply because a consultative examination was ordered.  *Edgecomb*, 841 F.App'x at 144 (An "ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion."); *Sryock*, 764 F.2d at 835 ("'The law is clear that, although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'") (citations omitted). The record reflects that the ALJ thoroughly discussed Dr. Pugh's opinion and clearly articulated reasons for granting it only partial weight:

> In February 2019, the claimant was noted to be alert, oriented, and cooperative, with normal mood, affect, and speech (Exhibit 20F at p. 5).
>
> The claimant did receive a VA disability rating partly based on mental health issues. The medical evidence of record shows that the claimant has been diagnosed with posttraumatic stress disorder and major depressive disorder. There was also a notation of alcohol abuse, and the record previously summarized showed migraine headaches. Whatever the most accurate diagnoses, the issue to be determined is the effect of all impairments, whatever they may be, upon the work-related mental functioning.

The record primarily mentions posttraumatic stress disorder, as the claimant's impairment. At one point, the claimant was prescribed buspirone. Eventually, the medication was changed to escitalopram. The general consistency of the medication reflects the effectiveness of the medication. Prior to the alleged onset date, the claimant had gone to Florida to help with her grandmother. After the death of her grandmother, there was no significant change in mental health issues. The alleged onset date occurred after the claimant had already been taking care of her grandmother and returned to Georgia to continue raising her minor daughter. None of this led to escalation of the mental health impairments or the course of treatment.

Observations of the claimant reflected mild impairments. There are few mental status examinations of record, but they generally reflected normal functioning. The claimant was alert and oriented. Behavior was cooperative. These finding correlate with the findings of treating physicians treating physical conditions. For instance, as noted above, in February 2019, the claimant was noted to be alert, oriented, and cooperative, with normal mood, affect, and speech (Exhibit 20F at p. 5).

What the claimant is able to do reflects significant mental capacity. The claimant could move to and from Florida. When in Florida, the claimant could help care for her grandmother. Other activities demonstrating normal concentration include operating a motor vehicle, handling finances, using Facebook, caring for her daughter, and watching television programs. Socially, the claimant not only cared for her grandmother and had a friend who drove her to the consultative examination, but she tolerated other people in different stores.

All of these considerations reflect that the claimant has a relatively mild mental health impairment. There may have been reasons other than disability, such as moving to Florida to care or a grandmother that coincided with her original alleged onset date. Nevertheless, there are occasions that the symptoms might exacerbate as they apparently once did -- causing an emergency department visit in October 2018. The claimant also reported that she did not like to deal with other people in statements to the consultative examiner and at the hearing. The consultative examiner simply credited the statement and found a marked limitation in interacting with others.

(Tr. 28-29).

The ALJ properly evaluated Dr. Pugh's opinion under 20 C.F.R. § 404.1527(c) and provided sufficient reasons supporting the finding that the opinion was due only partial weight. As noted by the ALJ, the few mental status examinations of record generally showed normal functioning, that Plaintiff was alert and oriented, and that her behavior was cooperative, which correlated with the findings of physicians treating her physical conditions. (Tr. 29, 449, 460, 473,

489, 496, 507, 945-46, 960-61, 971, 1063, 1138, 1147, 1844-45, 1862, 1881, 2425, 2463).  The ALJ also considered: that Plaintiff moved to Florida to care for her grandmother; that she cared for her teenaged daughter; that she could drive a vehicle, handle finances, use Facebook and watch television programs; that she could shop on occasion; that she tolerated other people in different stores; and that she could cook simple meals, perform household chores, and handle personal care. (Tr. 22-23, 27, 29, 286, 289-91, 2979).  The ALJ noted that Dr. Pugh was limited to a single evaluation, that Dr. Pugh's findings were not fully consistent with the medical evidence of record and activities of daily living, which showed relatively good functioning, and that Dr. Pugh's opinion was overly reliant on Plaintiff's subjective statements about irritability and not getting along with others.  (Tr. 29-30).

Moreover, the ALJ did not fully reject Dr. Pugh's opinion, but instead incorporated into the RFC limitations that were supported by the record as a whole, such as limiting Plaintiff to no more than occasional interaction with co-workers and supervisors and to no interaction with the public.  (Tr. 22, 30).  The ALJ further accommodated Plaintiff by limiting her to a low stress work environment, involving only work-related decisions with no more than occasional changes to the work routine.  (Tr. 22, 30).

Plaintiff additionally argues that the ALJ did not accurately characterize her daily activities. (Doc. 15 at pp. 12-13).  The court finds that the ALJ did not err in considering Plaintiff's daily activities, along with the record as a whole, when considering Dr. Pugh's opinion.  While Plaintiff attempts to question the ALJ's accuracy in summarizing some of Plaintiff's daily activities, the court finds that the ALJ sufficiently summarized Plaintiff's daily activities when assessing Dr. Pugh's opinion with the rest of the evidence in the record and that the ALJ's assessment of Dr. Pugh's opinion is supported by substantial evidence.  *Dyer*, 395 F.3d at 1212; *Sims*,

706 F.App'x at 604; *Horne v. Comm'r of Soc. Sec.*, No. 2:20-CV-181, 2021 WL 3023679, at *5

(M.D. Fla. June 28, 2021), *report and recommendation adopted*, No. 2:20-CV-181, 2021 WL

3022727 (M.D. Fla. July 16, 2021) ("To the extent Plaintiff disagrees with the ALJ's interpretation

of that evidence, that is not a ground for remand.") (citing *Sarria v. Comm'r of Soc. Sec.*,

579 F.App'x 722, 724 (11th Cir. 2014)).

Lastly, Plaintiff argues that Dr. Pugh's opinion was not based solely, or in any way

improperly, on Plaintiff's subjective complaints or reports.[9]  (Doc. 15 at p. 13).  The ALJ stated

that Dr. Pugh's opinion was overly reliant on Plaintiff's subjective statements about irritability and

not getting along with others.  (Tr. 30).  The ALJ's decision did not rest on this one factor, but

rather was based upon a consideration of the record as a whole.  Moreover, a claimant's statements

about pain or symptoms alone are not enough to establish the existence of a physical or mental

impairment or disability.  20 C.F.R. § 404.1529(a); SSR 16-3p, 2017 WL 5180304, at *2 (S.S.A.

Oct. 25, 2017); *Wimberley v. Berryhill*, No. CV 17-00558, 2019 WL 1418056, at *13 (S.D. Ala.

Mar. 29, 2019) ("The ALJ is not required to accept a claimant's allegations of pain or other

symptoms.").  "Consideration of a claimant's symptoms thus involves a two-step process, wherein

the Commissioner first considers whether an underlying medically determinable physical or

mental impairment exists that could reasonably be expected to produce the claimant's symptoms,

---

[9] Plaintiff also asserts the same arguments that she did regarding Dr. Vester: that the ALJ failed to
evaluate Dr. Pugh's opinion under the factors in 20 C.F.R. § 404.1527(c) or provide good reasons
for rejecting Dr. Pugh's opinion and that the ALJ improperly ignored Dr. Pugh's opinion because
it was a one-time examination.  (Doc. 15 at pp. 8-9).  As previously stated, the "good cause"
standard does not apply to nontreating sources.  *Lewis*, 125 F.3d at 1440.  Like Dr. Vester,
Dr. Pugh was not a treating physician.  Here, the ALJ thoroughly discussed the medical record and
sufficiently articulated reasons for finding that Dr. Pugh's opinion was entitled only to partial
weight.  Further, the ALJ thoroughly discussed Dr. Pugh's opinion in relation to the medical record
and properly noted that Dr. Pugh was a one-time examining physician, which was a proper
consideration under the law.  *Crawford*, 363 F.3d at 1160; *Beegle*, 482 F.App'x at 486.

such as pain." *Denny v. Kijakazi*, No. 8:20-CV-1573, 2022 WL 831901, at *7 (M.D. Fla. Mar. 21, 2022); 20 C.F.R. § 404.1529(a)-(b); SSR 16-3p, 2017 WL 5180304, at *3.   Once an underlying mental impairment that could reasonably be expected to produce the claimant's symptoms is established, the ALJ must then consider all of the evidence in the record to evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's capacity for work.   SSR 16-3p, 2017 WL 5180304, at *3-4; 20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b); *Lopez v. Comm'r of Soc. Sec. Admin.*, No. 6:19-CV-00986, 2020 WL 6203876, at *6 (N.D. Ala. Oct. 22, 2020).   In doing so, SSR 16-3p and the regulations require an ALJ to consider certain factors, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment, other than medication, to relieve pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2017 WL 5180304, at *8-9.

If the ALJ discredits a plaintiff's subjective statements, the ALJ "must articulate explicit and adequate reasons for doing so." *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). "Subjective complaint credibility is the province of the ALJ." *Williams v. Kijakazi*, No. 2:20-CV-277, 2022 WL 736260, at *2 (M.D. Ala. Mar. 10, 2022) (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014)).   The ALJ appropriately considered Plaintiff's subjective complaints in conjunction with the record as a whole and adequately provided reasons for giving Dr. Pugh's opinion partial weight.   Nonetheless, the ALJ did give the benefit of the doubt to Plaintiff's unsupported statements and the consultative examination by including in the RFC limits involving occasional interaction with coworkers and supervisors but no job

requirements involving interaction with the public.  (Tr. 30).

For the reasons, the court concludes that the weight given to Dr. Pugh's opinion is supported by substantial evidence and does not reflect any error by the ALJ.

### B.      VA Disability Rating

Plaintiff contends that the ALJ improperly rejected the VA disability rating, which corroborated Dr. Vester's and Dr. Pugh's opinions.  (Doc. 15 at p. 14).  "Although the V.A.'s disability rating is not binding on the [SSA], it is evidence that should be given great weight." *Brown-Gaudet-Evans v. Comm'r of Soc. Sec.*, 673 F.App'x 902, 904 (11th Cir. 2016) (citation omitted); *see also Hughes v. Comm'r of Soc. Sec. Admin.*, 486 F.App'x 11, 16 (11th Cir. 2012) ( "Even when an agency's definition of disability differs from that of social security law, if the agency's disability definition is construed in a similar manner as the definition of disability under social security law, it is error for the ALJ to not give that agency's finding of disability great weight." *Hughes v. Comm'r of Soc. Sec. Admin.*, 486 F. App'x 11, 16 (11th Cir. 2012).  Although "great weight" does not mean controlling weight, "the ALJ must seriously consider and closely scrutinize the VA's disability determination and must give specific reasons if the ALJ discounts that determination."  *Id*.   Nonetheless, an ALJ is not required to "state the precise amount of weight he gives the VA's disability determination."  *Adams v. Comm'r of Soc. Sec.*, 542 F.App'x 854, 857 (11th Cir. 2013).

All of that being said, "a decision by any other government agency, such as the VA, regarding a claimant's disabled status 'is based on [that agency's] rules and is not [the commissioner's] decision' as to disability. …'"  *Boyette v. Comm'r of Soc. Sec.*, 605 F.App'x 777, 779 (11th Cir. 2015) (citing 20 C.F.R. § 404.1504).  "[B]ecause other agencies may apply different rules and standards than we do for determining whether an individual is disabled, this may limit

the relevance of a determination of disability made by another agency." SSR 06-03p, 2006 WL 2329939, at *7 (S.S.A. Aug. 9, 2006). "[I]f the other agency's standard for determining disability deviates substantially from the Commissioner's standard, [it is not] error for the ALJ to give the agency's finding less than substantial weight." *Hacia v. Comm'r of Soc. Sec.*, 601 F. App'x 783, 786 (11th Cir. 2015).

Plaintiff had a 90% VA disability rating comprised of the following: 50% for PTSD; 50% for migraines; 40% for lumbosacral or cervical strain; 10% for limited range of motion of the wrist; 10% for bronchial asthma; and 10% for allergic or vasomotor rhinitis. (Tr. 24, 1518). Plaintiff argues that the ALJ erred by rejecting the 90% disability rating without providing a sufficient explanation for doing so. (Doc. 15 at p. 15).

To evaluate that issue, the court must first ask "whether the ALJ's decision shows that she considered the other agency's decision. If the ALJ's decision does not discuss the other agency's decision, the case must be remanded to the Commissioner for consideration of the other agency's decision." *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1330 (11th Cir. 2020) (citation omitted). However, if the ALJ did discuss the other agency's decision, "the court moves on to the second step of the analysis: whether substantial evidence in the record supports the ALJ's decision to depart from the other agency's decision. If there is substantial evidence in the record, then the ALJ's decision should be affirmed." *Id.* (citation omitted).

Clearly the ALJ considered the Plaintiff's VA disability rating. (Tr. 30: "The record includes a VA disability rating."). The ALJ recognized that Plaintiff received a VA disability rating partly based on mental health issues. (Tr. 29). The ALJ stated that the medical evidence of record showed that Plaintiff had been diagnosed with PTSD and major depressive disorder, that there was also a notation of alcohol abuse, and that the record showed migraine headaches. (*Id.*).

The ALJ explained that "[w]hatever the most accurate diagnoses, the issue to be determined is the effect of all impairments, whatever they may be, upon the work-related mental functioning." (*Id*.). The court thus most focus on whether the ALJ's decision to depart from the VA disability rating is supported by substantial evidence.

The ALJ noted that the Veteran Administration Medical Center reported in February 2017 that Plaintiff had a transient ischemic attack in October 2013 and other past conditions including headache, hypertension, dyslipidemia, obesity, backache, asthma, and sleep apnea, as well as nausea and vomiting. (Tr. 24). The ALJ also noted that VA records showed that Plaintiff saw a neurologist in late March 2017 for migraines. (Tr. 24). The ALJ additionally noted as follow as to a variety of Plaintiff's medical conditions:

> The medical evidence of record summarized above establishes that the claimant has complained about back pain and she might have degenerative disc disease. There is also osteoarthritis of the left shoulder, bilateral knees, and bilateral hands. These impairments can directly affect the claimant's ability to perform work-related functions, such as standing and walking. The record shows the claimant to have migraines, history of transient ischemic attack, gastroesophageal reflux disease, hypertension, hyperlipidemia, asthma, and Barrett's esophagus, which can decrease the claimant's stamina and reduce the ability to engage in those same work-related functions. The record includes a diagnosis of obesity and it includes measurements that convert to a body mass index that is defined as obesity.

(Tr. 26).

However, the ALJ further noted that Martin Army Community Hospital reported in September 2018 that Plaintiff's chest x-ray study was normal, that a recent MRI of the brain was negative, that an ultrasound study of the abdomen reflected only a mildly enlarged liver, and that other studies were unremarkable. (Tr. 25). The ALJ similarly noted that:

> During the rest of 2017, the claimant had frequent emergency department visits to Bay Pines Veteran Hospital. The variety of complaints included chest pain, lightheadedness, vomiting, and breathing difficulties. An esophagogastroduodenoscopy found some gastritis, which was treated with medication. Hypertension medication was adjusted. The claimant was noted to have

26

> gastroesophageal reflux disease and hypertension. There had been some unintended weight loss. The claimant used a CPAP machine for obstructive sleep apnea. The claimant had a ninety percent VA disability rating with fifty percent posttraumatic stress disorder, fifty percent migraine headaches, forty percent lumbosacral or cervical strain, ten percent limited motion of the wrist, ten percent asthma, and ten percent allergic rhinitis. When the claimant had a headache in November 2017, she admitted that she did not take any medication other than aspirin (Exhibits 8F, 9F, 10F, and 11F). The claimant had a normal gastric emptying study in early 2018 (Exhibit 16F).

(Tr. 24). In sum, when considering Plaintiff's treatment notes as a whole, the ALJ observed that "[i]maging revealed no degenerative disc disease in the lumbar spine before the alleged onset date, and the impairment was not severe enough to follow up with further studies," that Plaintiff "did not always mention back pain or any musculoskeletal pain or tenderness," that "[i]maging of other joints found no more than minimal or small abnormalities," that medication usually kept the Barrett's esophagitis and gastroesophageal reflux disease in check and exacerbations were not frequent, that the "associated dysphagia was improved by surgery once it became prominent," that Plaintiff's hypertension was controlled by medication, and that "dyslipidemia had little effect on work-related function." (Tr. 26).

The ALJ also considered two letters written by Luzmira Torres, M.D. of the Central Alabama Veterans Health Care System in August 2016 and February 2017 relating to Plaintiff's migraines and gave the letters partial weight, as they were from before the alleged onset date. (Tr. 26, 2975-76). The ALJ stated that the migraines were described as mild by treating physicians, and they were manageable by medication, except on rare occasions when Plaintiff went to the emergency department:

> A change in hypertension medication may have helped the headaches, and sumatriptan seemed to manage the headaches. The claimant reported worsening headaches to the consultative examiner, but she did not submit treatment records to corroborate her statement. The transient ischemic attack took place before the alleged onset date with no residual symptoms. The asthma was described as mild. Exacerbations or upper respiratory infections demanding treatment were rare, and

> minimal medication was necessary for the asthma. Imaging revealed no more than
> mild interstitial changes in the lung fields, and the claimant typically had no active
> disease (Exhibit 17F at p. 39). Body mass index barely meets the minimum defined
> as obesity.

(Tr. 26-27). Additionally, the ALJ considered Plaintiff's own comments to treating physicians,

observations of treating physicians on the mildness of the Plaintiff's impairments, and the mild

nature of Plaintiff's course of treatment and medications taken. (Tr. 27).

> With respect to Plaintiff's alleged mental impairments, the ALJ noted:

> In June 2018, after the alleged onset date, the claimant had a negative posttraumatic
> stress disorder screening (Exhibit 15F at p. 33). In October 2018, physical
> examination showed the claimant to be alert and oriented with normal mood, affect,
> and behavior (Exhibit 21F at p. 427), although one possible cause for chest pain
> was an anxiety reaction (Exhibit 21F at p. 431). The claimant did not report taking
> any medication addressing a mental health issue in November 2018, and she
> appeared to have a normal mood, was alert with good insight and judgment (Exhibit
> 20F at pp. 41 - 43).

> In February 2019, the claimant was noted to be alert, oriented, and cooperative,
> with normal mood, affect, and speech (Exhibit 20F at p. 5).

(Tr. 28-29). Additionally, the ALJ considered Plaintiff's activities in concluding that Plaintiff only

"has a relatively mild mental health impairment":

> Observations of the claimant reflected mild impairments. There are few mental
> status examinations of record, but they generally reflected normal functioning. The
> claimant was alert and oriented. Behavior was cooperative. These finding correlate
> with the findings of treating physicians treating physical conditions. For instance,
> as noted above, in February 2019, the claimant was noted to be alert, oriented, and
> cooperative, with normal mood, affect, and speech (Exhibit 20F at p. 5).

(Tr. 29).

Unlike social security's requirements for determining disability, the VA regulations

provide that "[t]otal disability will be considered to exist when there is present any impairment of

mind or body which is sufficient to render it impossible for the average person to follow a

substantially gainful occupation." 38 C.F.R. § 3.340(a)(1). "When there is an approximate

balance of positive and negative evidence regarding any issue material to the determination of a matter, the [VA] shall give the benefit of the doubt to the claimant." 28 U.S.C. § 5107(b). Moreover, "[f]or a veteran with multiple service-connected disabilities, the regulations instruct the VA to combine the individual ratings using a 'combined ratings table' instead of adding up the percentage of each disability." *Pirtle v. Saul*, No. CV 119-112, 2020 WL 3971512, at *4 n.3 (S.D. Ga. July 14, 2020), *report and recommendation adopted*, No. CV 119-112, 2020 WL 4587518 (S.D. Ga. Aug. 10, 2020); *see* 38 C.F.R. § 4.25.   The ALJ expressly referenced the differing standard as a basis to discount the weight of the VA disability rating:

> The record includes a VA disability rating. Because the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner, an administrative law judge is not bound by disability decisions by other governmental and nongovernmental agencies. In addition, because other agencies may apply different rules and standards than Social Security Administration does for determining whether an individual is disabled, this may limit the relevance of a determination of disability made by another agency. The percentage rating does not easily translate into a residual functional capacity, but the evidence upon which it relies has already been cited and considered. The undersigned has accounted for the Veteran Administration record, and the factors already cited to formulate the above residual functional capacity. The rating deserves little weight for the purposes of this decision.

(Tr. 30).  Under the circumstances presented, the ALJ's decision to give the VA disability rating little weight is supported by substantial evidence and did not constitute error.

## V.      Conclusion

After carefully and independently reviewing the record, and for the reasons stated above, the court concludes that the Commissioner's decision is due to be **AFFIRMED**.   A separate judgment will issue.

**DONE** this the 31st day of March 2023.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**